IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO.  SAG-24-0120 |
| | * |
| HAROLD DORMAN | * |
| | * |
| Defendant. | * |
| | * |
| | ******* |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America respectfully submits this response in opposition to the defendant's Motion to Suppress Evidence Obtained as a Result of Execution of Certain Warrants (ECF 101). The defendant's motion is without merit and the Court should deny it.

**I.   FACTUAL BACKGROUND**

**A. Howard County and Baltimore County Pharmacy Burglaries**

On January 5, 2022, at approximately 3:30 am, Feldman's Medical Center Pharmacy located at 11055 Little Patuxent Parkway in Columbia, Maryland was burglarized.  Surveillance footage showed two masked suspects dressed in dark clothing exit a 4-door white Honda Civic and gain entry by prying open the front door to the business.  One suspect carried a silver Halligan[1] bar and wore black gloves and black sneakers.  The second suspect carried a blue pry bar and wore purple gloves and white/grey sneakers.  Fifty dollars in U.S. currency and a trash can from inside the pharmacy were taken.  The suspects exited the building at 3:33 am.

---

[1] A Halligan is a multipurpose tool used for prying, twisting, and striking.  Invented by a New York City fireman, it is useful in quickly breaching locked doors.  https://en.wikipedia.org/wiki/Halligan_bar (last visited May 3, 2025).

Then at 4:00 am, the Catonsville Pharmacy located at 6350 Frederick Road in Catonsville, Maryland was burglarized.  A neighboring business camera captured the suspect vehicle, a white Honda with a sunroof.  Like the Feldman's burglary, the suspects gained entry by prying open the door to the business.  There were no interior surveillance cameras to capture suspects' descriptions, and the suspects parked off exterior camera view.

On January 14, 2022, at approximately, 2:00 am, two suspects attempted to enter the Rehya Pharmacy located at 405 Frederick Road in Catonsville, Maryland.  The suspects tried to pry open the door to the pharmacy using a silver Halligan pry bar and a blue pry bar but were unsuccessful.  The surveillance video showed the suspects wearing similar clothing to the suspects in the Howard County burglary and it also captured the license plate of the suspect vehicle, a white Honda Civic with a sunroof and MD tag 8DN3476.  Detectives conducted a check of the registration and met with the owner of the tag, who stated that the tag had been stolen sometime between 1/11/2022 and 1/14/2022.

**B.  Montgomery County and Charles County Pharmacy Burglaries**

Also on January 14, 2022, at approximately 2:38 am, the Medicine Shoppe Pharmacy located at 10313 Georgia Ave, Silver Spring, Maryland was burglarized.  Surveillance footage showed two suspects wearing dark hoodies and black pants using a Halligan pry bar to gain entry. The clothing appeared to match that worn by the suspects in the attempted burglary at the Rehya Pharmacy.  The suspect vehicle was a white Honda (police report describes it as an Accord) with a sunroof displaying stolen MD Tag 8DN3476.

Then at 3:43 am, Pembrooke Pharmacy located at 11355 Pembrooke Square in Waldorf, Maryland was burglarized.   Surveillance video showed two suspects gain entry through the use of a Halligan bar and the suspects appeared to be `wearing the same clothing as the suspects in the

-2-

Medicine Shoppe Pharmacy surveillance video. The suspects stole approximately $1,557 worth of Oxycodone (Schedule II), Promethazine-Codeine (Schedule V) and $200 in U.S. currency. The suspects emptied a trash can from inside the business and threw items inside. A red-light camera captured a white 4-door Honda Civic MD tag 8DN3476 (same vehicle that was used in the Reyha Pharmacy burglary and the Medicine Shoppe burglary) near the shopping center at approximately 3:35 am.

### C. Albemarle County, Augusta County, Rockingham County Pharmacy Burglaries

On January 19, 2022, 1:57 am, the UVA Pharmacy Pantops located at 590 Peter Jefferson Parkway, Charlottesville, Virginia (Albemarle County) was burglarized. Two black male suspects, one dressed in all back with red sneakers and red gloves armed with a silver Halligan bar, one dressed in all black with gray Nike sneakers with blue/purple gloves armed with a blue pry bar, broke into the business. The suspects stole approximately $1111.53 worth of controlled substances including Hydrocodone-Acetaminophen (Schedule II), Oxycodone HCL (Schedule II) and Promethazine-Codeine syrup (Schedule V). Surveillance video showed the suspects place the drugs into a yellow bucket from the pharmacy and exit the business in two minutes. There was no exterior video surveillance to capture a suspect vehicle.

Then, at 2:37 am, Fisherville Family Pharmacy located at 16 Gosnell Crossing, Unit 101, Staunton, VA (Augusta County) was burglarized. Outside surveillance showed a white Honda with a sunroof arrive and park in front of business. The vehicle bore a Virginia tag ending in 3174. Two suspects dressed in all black, one wearing red gloves, one wearing blue/purple gloves, one with black sneakers, other suspect wearing gray and white sneakers, can be seen on surveillance video prying open front door of business with a silver Halligan tool and a blue pry bar. The suspects took one bottle of Promethazine-Codeine syrup (Schedule V).

At 3:34 am, Medicap Pharmacy located at 1851 Virginia Avenue in Harrisonburg, Virginia (Rockingham County) was burglarized. Surveillance video showed two suspects gain entry by use of a silver Halligan bar and blue pry bar. The suspects can be seen wearing all black, one suspect wearing red gloves, one suspect wearing blue/purple gloves. No items were taken. Surveillance video showed a white Honda Civic with sunroof and Virginia tag ending in 3174 arrive and park directly in front of the door to the business. The Virginia tag (UKY-3174) was later reported stolen to Fairfax County Police Department in Virginia.

On January 25, 2022, Detective Gregory Miller of the Harrisonburg Police Department (Rockingham County, VA) obtained cell tower dump search warrants for AT&T and T-Mobile. A third warrant was obtained for Verizon on January 28th. The warrant sought cell tower business records for the area covering the locations of the January 19th pharmacy burglaries and the time frame around the burglaries – 1851 Virginia Avenue in Harrisonburg from 3:20 am-3:50 am, 590 Peter Jefferson Parkway in Charlottesville from 12:30 am to 2:00 am, and 16 Gosnell Crossing in Staunton from 2:30 am to 3:00 am. In his affidavit, Detective Miller described the similarities in the string of burglaries across neighboring counties from January 19th, including suspect descriptions, suspect vehicle description, descriptions of the specific pry tools used by the suspects and general modus operandi of the crimes. Detective Miller stated in the affidavit for these warrants that probable cause was based in part on his personal knowledge and in part on information provided by detectives in Albemarle County and August County.

On January 25, 2022, Detective Brian Hartman of the Howard County Police Department received a "be on the look-out" communication from the Harrisonburg Police Department (Rockingham County, Virginia) regarding the burglaries occurring on January 19th. After reviewing photographs from the different surveillance videos, Detective Hartman noted the

similarities to the Howard County and Baltimore County burglaries in the modus operandi, the suspect and vehicle description, and the tools used to pry open business doors.

On January 26, 2022, Detective Hartman obtained a Geofence warrant directing Google to provide GPS, WiFi, and Bluetooth sourced location history data generated from devices that reported a location within a certain geographical region. The warrant limited the search parameters by date, time, and geographical region. Specifically, the search parameters were narrowed to the areas surrounding the January 5th and January 14th burglaries (maximum radius was 65 meters) and the requested window of time was limited to minutes (maximum was 25 minutes). When Detective Hartman received from Google the initial, limited anonymized information of devices within the geofence area ("Step 1")[2], he determined that there was no device information relevant to the burglary investigation[3]. Detective Hartman did not seek additional location information from Google (what is often referred to as "Step 2"), and he certainly never sought account-identifying information for the users of any of the listed devices ("Step 3") as he determined that they were not relevant to the investigation. As a result, Detective Hartman did not use the anonymized device information in any way in the investigation. In other words, the Geofence warrant was a dead-end.

D. **Louisa County and Harrisonburg Pharmacy Burglaries**

On February 8, 2022, at approximately 1:16 am, HCHC Pharmacy at 1380 Little Sorrell Drive in Harrisonburg, Virginia was burglarized. Exterior surveillance cameras captured a red Honda 2-door sedan suspect vehicle arrive on scene and two suspects: one wearing all black with

---

[2] Google has developed a three-step process in responding to geofence warrants, providing to law enforcement an anonymous "list of all Google users whose Location History data indicates were within the geofence during a specified timeframe. *United States v. Chatrie,* No. 22-4489, 2025 WL 1242063, at *2 (4th Cir. Apr. 30, 2025).

[3] As Detective Hartman indicated in a report dated June 30, 2022, he did not receive the initial information from Google in response to the Geofence warrant until March 24, 2022.

-5-

white shoes using a blue pry bar; one wearing a black and gray hoodie, black jacket, black sneakers carrying a silver Halligan bar. Interior surveillance cameras captured the suspects inside where they stole $99 worth of controlled substances stolen including Hydrocodone-Acetaminophen (Schedule II), Adderall (Schedule II), and Promethazine-Codeine (Schedule V).

Later at approximately 3:29 am, the UVA Health Systems Pharmacy located at 1015 Spring Creek Parkway in Zion Crossroads, Virginia was burglarized. Surveillance video captured two suspects in dark clothing arrive in a red suspect vehicle and enter the business using a blue pry bar and silver Halligan tool. The suspects stole $25 worth of Promethazine-Codeine syrup.

At 4:00 am, the Food Lion Pharmacy located at 11010 Kentucky Springs Road in Mineral, Virginia was burglarized. Surveillance video from an external camera showed what appeared to be the same red suspect vehicle that was used in the earlier burglaries on this date. Surveillance video from an internal camera captured what looks like just one suspect in all black entering the business with the use of a Halligan tool. The suspect emptied a trash can in the pharmacy and used it to conceal stolen controlled substances - $8529 worth of drugs stolen including Adderall (Schedule II), Hydromorphone (Schedule II), Methylphenidate (Schedule II), Oxycodone HCL (Schedule II), Morphine Sulfate (Schedule II), Promethazine-Codeine (Schedule V).

On February 12, 2022, Detective Mark Stanton of the Louisa County Sheriff's Office obtained a cell tower dump search warrants to be served on Sprint, T-Mobile and Verizon authorizing the search of business records for cell sites servicing the areas of the two February 8th burglaries in his jurisdiction (UVA Health System and Food Lion Pharmacy), limiting the requested window of time for each geographic location to one hour and 15 minutes for the first location, and one hour for the second location. In his affidavit, Detective Stanton detailed the modus operandi of each of the two crimes as well as the third committed earlier in the morning in

Harrisonburg (HCHC Pharmacy). From the results of the cell tower dump warrants, Detective Stanton identified a phone number around both Louisa County burglaries on February 8th – (240) 524-0022 (a pre-paid phone subsequently linked to Harold Dorman). A review of call detail records showed that at both burglary locations, the 0022 phone number was in contact with phone number (202) 440-3164, subscribed to William Sherod III.

Law enforcement now had two phone numbers of interest, and that information was shared with other law enforcement agencies who by then were working together to identify suspects in their respective burglary investigations. Detective Miller of the Harrisonburg Police Department went back to the results of his January 25, 2022 cell tower dump warrants and discovered that the 0022 phone number was present at the January 19th burglaries.

On February 28, 2022, Detective Gregory Miller then obtained another set of cell tower dump search warrants, requesting data from just a 25-minute window within the coverage area of the February 8th burglary in Harrisonburg. In his affidavit, Detective Miller relied on facts from the burglary and the other burglaries committed on the same date in Louisa County, noting the similarities in the suspects descriptions, clothing, suspect vehicle, burglary tools and modus operandi. Detective Miller also stated in the affidavit that the probable cause was based on his personal knowledge of the investigation and information provided by Louisa County Detective Mark Stanton. In the affidavit, Detective Miller did not rely on any information from earlier cell tower dump warrants.

On March 7, 2022, Albemarle County Detective Nicholas Richardson obtained search warrants for real time location data for a phone number registered to co-defendant William Sherod (ending in 3164) and a phone number ending in 0022 with no subscriber information. In the affidavit, Detective Richardson included the results of the Louisa County and Harrisonburg cell

tower dump warrants implicating the users of 3164 and 0022 phone numbers. Howard County Police obtains historical cell site location information for both phones, including the results from the Louisa County cell tower dump warrants that placed Dorman's 0022 phone at their burglaries. HCPD detectives start conducting surveillance on Sherod and Dorman's vehicles.

Through the months of February, March, and early April the pharmacy burglaries continued in various parts of Maryland and Pennsylvania, the motive operandi always the same. The continued sharing of information resulted in a collective knowledge among the law enforcement agencies in what appeared to be a related string of crimes. They used physical surveillance, real-time pinging of cellphones, and GPS trackers on suspect vehicles to further the investigation and home in on suspects. Finally on April 12, 2022, Sherod and his co-defendants were caught in the middle of committing another pharmacy burglary in Salisbury, Maryland. Sherod was acting as a look-out when he was approached by officers, lying to them about the reason for his presence on scene at 3:00 am. Sherod's co-defendants scrambled inside of the business looking for a way out of the building that was by then surrounded by police. All three defendants were finally captured.

II. **ARGUMENT**

    A.  **THE APRIL RENEWAL OF THE ALBEMARLE COUNTY REAL TIME LOCATION DATA SEARCH WARRANTS WAS SUPPORTED BY PROBABLE CAUSE**

The Court should deny the defendant's motion to suppress the April 2022 renewal of the Albemarle County Real Time Location Data Warrants originally authorized on March 7, 2022. The renewal satisfied the Fourth Amendment's probable cause and particularity requirements.

In reviewing the probable cause in a search warrant, a reviewing court should not substitute its judgment as to probable cause, but need only determine whether there was a "substantial basis" for the issuing court's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238-39

(1983). When an issuing judge makes a finding of probable cause, a reviewing court should avoid "interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). … Assessments concerning probable cause are to be made after the totality of the circumstances test has been used to determine the adequacy of the application. …" *Id.* (quoting *Errera*, 616 F. Supp. at 1149). As Chief Judge Blake noted in the *McKinney* case, "[t]he function of this Court, which is essentially reviewing the previous findings of [the issuing judge], is not to make de novo determinations of sufficiency as if it were [an issuing judge], but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *McKinney*, 785 F. Supp at 1220.

Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). A judge's decision to issue a search warrant is reviewed with "great deference" -- they need only "a 'substantial basis' for finding probable cause." *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019) (*quoting Gates*, 462 U.S. at 236–38, 103 S.Ct. 2317). Probable cause is a concept that has "long been understood to encompass circumstances that, while less than a preponderance, 'warrant suspicion.'" *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021). Probable cause is thus "not a high bar." *United States v. Orozco*, 41 F.4th 403, 408 (4th Cir. 2022).

Here, a nexus existed between the information sought to be renewed in the April 2022 warrants and the sweeping string of criminal activity outlined in the affidavits. The nature of the burglaries and the modus operandi in how they were committed established a clear link between the information sought to be renewed and the criminal activity.

Dorman does not appear to challenge the sufficiency of the Albemarle County warrants issued on March 7, 2022. (Def. Ex. 1 and 2). Instead, Dorman takes issue with the issuance of the April 6, 2022 renewals of those warrants. These renewal warrants were issued less than a month after the March 7, 2022 warrants and contained the same affidavit establishing probable cause. That affidavit is lengthy and complex—noting that numerous jurisdictions across two states are investigating this "string" of pharmacy burglaries. These different pharmacy burglaries mirror each other almost entirely, with the only difference being the jurisdictions in which they take place.

Looking at the totality of the circumstances in an investigation with this level of complexity, the requested thirty-day period to track the cellphone was a starting point for detectives. In fact, the Virginia statute that governs real time location data warrants only allows for a thirty day window at a time.[4] Given the nature of the investigation, they needed to renew the request for real time tracking on Dorman's cellphone. Indeed, in April, investigators applied again for a short 30-day renewal adding onto their Attachment A the statement, "Although the investigation is obtaining results, a 30-day extension to this search warrant is required due to the magnitude of the investigation in order to continue it further toward completion." *See* Defense Exs. 3-4. Under VA Code Ann. § 19.2-70.3 which governs real time location data warrants, the statute states that:

> "A court may, for *good cause shown*, grant one or more extensions, not to exceed 30 days each." Va. Code Ann. § 19.2-70.3(J) (emphasis added)

While this particular statute does not define what "for good cause shown" means when it comes to thirty day extensions, the statute that governs "tracking devices" does:

---

[4]Va. Code Ann. § 19.2-70.3

-10-

> "Good cause shall include, but not be limited to, *a continuing criminal investigation*, the potential for intimidation, the endangerment of an individual, or the preservation of evidence." Va. Code Ann. § 19.2-56.2 (emphasis added)

A real time location data warrant is arguably akin to a "tracking device" in that it does perform the same "tracking" function as a GPS tracking device placed on a vehicle. Further, Virginia case law in *Turner v. Commonwealth*, 65 Va.App.312 (2015) goes into detail with its ruling,

"The "good cause" language contained in the statute addressing search warrants for tracking devices applies only to the standard for securing an extension of the temporal scope of the warrant and does not supplant the constitutional and statutory requirement that the warrant itself must be based on probable cause; a timing extension is only proper if there is good cause for an extension and probable cause to support the original warrant still exists at the time of the extension."

Here, the affiant acknowledged that everything written in their affidavit is still accurate and that based on the magnitude and complexity of the investigation, a short thirty day extension would be needed to "further" the investigation. It had been less than thirty days since the original warrant had been signed and there is no doubt that the probable cause to support the original warrant still existed at the time of the extension on April 7, 2022. The affiant followed the statute's requirement for a thirty day extension and stated that the thirty day extension was necessary for continuing the criminal investigation. Clearly, the reviewing Judge found this to satisfy the statute's "good cause shown" requirement required for a thirty day extension.

The added statement at the bottom of the renewal warrants, when taken in the greater context of the warrant, establishes that with the extension, a "fair probability that contraband or evidence of a crime will be found in a particular place…and it exists only where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that criminal

evidence will be discovered in the place to be searched." *Gates*, 462 U.S. 213. The crimes under investigation swept broadly over different states and they involved extensive movement, travel and coordination among conspirators and locations. Based on all of the above, the affiant appropriately followed the applicable statute in his jurisdiction and the reviewing judge appropriately applied that statute when approving the extension.

**B. THERE WAS NO IMPERMISSIBLY OBTAINED INFORMATION FROM THE CHALLENGED WARRANTS**

Dorman challenges **both** the March and April warrants stating that "AT&T and Verizon were required by the Commonwealth of Virginia to provide real-time location data for these two phones to a member of the Albemarle County Police Department only." Def. Motion at 4. There is absolutely no legal or factual basis that supports this claim and therefore the motion to suppress should be denied.

Without more information as to this accusation, the government assumes that defense is referring to the statement at the top of page 1 on each of the challenged search warrants that reads:

> **SEARCH WARRANT**    VA. CODE ANN. §§ 19.2-56.57
> RULE 3A:27
> ☒ To any policeman of a county, city or town: Albemarle County
> ☐ To _____ :

*See* Defense Exhibits 1-4.

Dorman interprets that this checked box means that AT&T and Verizon can *only* provide results to Albemarle County. Dorman's reliance on that interpretation is misplaced. It appears that that section on page 1 on each of the challenged warrants simply says that the warrant is to be

executed and/or served by a member of the Albemarle County Police Department. There is nothing on the cover sheets or within the affidavit that would suggest that the results of these warrants are not to be shared with anyone outside of the Albemarle Police Department. In fact, Attachment A mentions numerous other departments and agencies outside of the Albemarle Police Department that have been involved in the investigation thus far. Further, on page 2 of the warrant packages (Defense Exs. 1-4), the affiant specifically lists out the other agencies that are "assisting with the investigation.": [5]

> 6. [X] I have personal knowledge of the facts set forth in this affidavit AND/OR
>
>    [X] I was advised of the facts set forth in this affidavit, in whole or in part, by one or more other person(s). The credibility of the person(s) providing this information to me and/or the reliability of the information provided may be determined from the following facts:
>
>    Your affiant has over 8 years of law enforcement experience and is currently assigned to the Criminal Investigations Division as a Burglary detective with the Albemarle County Police Department.
>    Detective Vincent with the Augusta county Sheriff's office is currently in good standing and assisting with this investigation.
>    Detective Miller with Harrisonburg PD is currently in good standing and assisting with this investigation.
>    Detective Hartman of Howard county, MD PD is currently in good standing and assisting with this investigation.

Absent more, there is no basis that the information received as a result of these warrants were "impermissibly obtained" by the other law enforcement agencies. Therefore, there is nothing for the Court to suppress and the Court should deny Dorman's motion.

### C. THE OFFICERS RELIED ON THESE WARRANTS IN GOOD FAITH

Even if the Court has doubts that the April renewal warrants were supported by probable cause, the motion to suppress should be denied because the executing officers clearly relied in good faith on a facially valid warrant. *See United States v. Leon*, 468 U.S. 987, 992 (1984). Under the *Leon* good faith exception, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Bynum,* 293 F.3d 192, 195 (4th Cir. 2002). Officers are presumed

---

[5] Highlighting added for ease of reading

to have acted in good faith except in certain narrowly defined circumstances: "(1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate wholly abandoned his judicial role . . . ; (3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if under the circumstances of the case the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. DeQuasie,* 373 F.3d 509, 519–20 (4th Cir. 2004) (internal quotation marks omitted).

      Similarly, here, the April renewal of the warrants was in no way so "facially deficient" of probable cause that the affiant could not have a reasonable belief as to its legality. The affiants detailed specific evidence related to each of the known pharmacy burglaries at that time and how that evidence was linked to the real time location data sought. Those facts alone provided a substantial basis for the issuing judge to make a probable cause determination that evidence would continue to be found within in the location data. Even if the Court believes that the April renewal search warrants were not properly authorized, the agents' reliance on the warrant was reasonable.

      There is no evidence and no basis to believe that the authorizing judge abandoned their judicial role in issuing the renewal of the warrants. Therefore, even assuming for argument that the April renewal affidavits were invalid (which it was not), the Court may still receive the evidence under the good faith exception to the exclusionary rule.

**III. CONCLUSION**

      The April renewal of the real time location data warrants fulfilled the probable cause and particularity requirements and the reviewing judge had a substantial basis for re-issuing them for

another 30 days. As such, even if the court were to find that the April renewal of the real time location data warrants were deficient, the good faith exception applies and the motions should be denied. There is also no evidence or basis for defense's argument that these warrants were only to be shared with Albemarle County Police. Therefore, for the foregoing reasons, the United States respectfully requests that the Court deny Dorman's motion to suppress.

                                Respectfully submitted,

                                Kelly O. Hayes
                                United States Attorney

By: _____/s/_____
       Kim Y. Hagan
       Sarah Simpkins
       Assistant United States Attorneys